WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.—April, 1887.

BARKER *v.* CRAWFORD.

*In the matter of the judicial settlement of the account of* MORRIS D' C. CRAWFORD *and others, as executors of the will of* JOSEPH S. BARKER, *deceased.*

Testator, who died without issue, and having had seven brothers and sisters, each of whom had died before the execution of the will, leaving issue, by that instrument, after giving various general, and other legacies, directed the executors to divide the residue of his estate into equal shares, one more in number than the number of legatees mentioned in the residuary clause; five of which shares were then given to four individuals named, and " one share to each of the children, living at the time of my (his) death, of my (his) deceased " *brothers and sisters,* mentioning six of the latter successively; further providing : " But in case any one or more of the children of either or any of my deceased brothers and sisters *mentioned* in this clause of my will *shall die or have died* before me, leaving lawful issue surviving at the time of my death, then and in that case such issue of my deceased nephew or niece shall receive the share which his or her ancestor would have received under this clause of my will, had he or she been living at the time of my death," with one exception.

Of the brothers and sisters mentioned in the residuary clause, some children had died before, and none died after the execution of the will. It was contended that the object of the clause quoted was to substitute the grandchildren, for any of the children, of brothers and sisters who might die after the will was executed and before testator's death.—

*Held*, that the will manifested an intent on the part of testator that the issue of such children, of the six brothers and sisters mentioned, as were dead at the time of execution should take shares in the residue, as direct and not as substituted legatees.

THE testator, Joseph S. Barker, died without issue. He had had seven brothers and sisters, who were all dead at the date of his will, leaving issue.   The names of the brothers and sisters were Isaac Barker, Nathaniel Barker, Thomas B. Barker, Elijah C. Barker, Jane Hart, Mary Crawford and Frederick Barker.   By his will, among other bequests, he gave general legacies of $1,000 each to the two granddaughters of his brother Isaac; to a grandson of his deceased brother Nathaniel $2,000; to three children of Dorinda Edwards, who were grandchildren of his deceased brother, Thomas B. Barker, each $1,000; to a grandson of his deceased brother, Elijah C. Barker, $2,000; to two children of Joseph B. Crawford, being grandchildren of his deceased sister, Mary Crawford, $1,000 each; to two children of Mary Stevens, who were grandchildren of said Mary Crawford $1,000 each; to the children of Samuel Crawford, deceased, $2,000 each; to the son of Almira Mickel, a daughter of said Mary Crawford $1,000; and to the three daughters of his deceased brother, Frederick, $700 each.   He also gave to the children of Mary Jane Gordon, grandchildren of his deceased brother Thomas B. Barker, who should be living at the time of his death, the sum

of $1,000, to be equally divided between them.    The seventh clause of the will is as follows:

"*Seventh.*    All the rest, residue and remainder of my said estate I direct my executors to divide into equal shares; the number of said shares to be made one more than the number of legatees hereinafter mentioned in this clause of my will; and I give, devise and bequeath and I direct my executors to pay the amount of the said rest, residue and remainder of my said estate after being divided into equal shares, as follows: Two of such shares as provided for to Grace Place, the wife of Barker Place.    One share to Marion, daughter of Barker and Grace Place.    One share to Emeline Hayward, daughter of my deceased niece, Susan A. Place.    One share to Isabel Sullivan, daughter of my deceased niece, Susan A. Place.    One share to each of the children living at the time of my death of my deceased brother, Isaac Barker.    One share to each of the children living at the time of my death of my deceased brother, Nathaniel Barker.    One share to each of the children living at the time of my death of my deceased brother, Thomas B. Barker.    One share to each of the children living at the time of my death of my deceased brother, Elijah C. Barker.    One share to each of the children living at the time of my death of my deceased sister, Jane Hart.    One share to each of the children living at the time of my death of my deceased sister, Mary Crawford, but in case any one or more of the children of either or any of my deceased brothers and sisters mentioned in this clause of my will shall die or have died before me leaving lawful issue surviving at the time of my death,

then and in that case, such issue of my deceased nephew or niece shall receive the share which his or her ancestor would have received under this clause of my will had he or she been living at the time of my death, excepting in the case of the issue of Lemuel Crawford, deceased, to whom this clause shall not apply. The children of the said Lemuel Crawford, deceased, having been left a legacy in a former clause of this will." Under one interpretation of this will the number of shares would be 17, and, under the other, 27.

G. H. & F. L. CRAWFORD, *for executors.*

J. K. HAYWARD, *for Emeline P. Hayward, one of* 17.

ROSCOE H. CHANNING and P. J. O'REILLY, *for some of* 17 *class.*

WALTER EDWARDS, JOSEPH S. WOOD, JAS. F. RANDOLPH and GWILLIM & MEYERS, *for Charles S. Barker and others of the larger class.*

THE SURROGATE.—Had the testator died intestate, the statute of distribution would have restricted the takers of the estate, which is made wholly legal assets by the will, to brothers' and sisters' children. The testator clearly intended to go beyond such restriction in the disposition of his estate, and the question is whether such intention reached so far as to include issue of deceased brothers and sisters so as to render the residue divisible into twenty-seven shares, or to confine it to seventeen. This question depends upon the construction of the seventh, or residuary, clause of the will, taken in connection with the rest of the instrument, and the facts of the case, which, it is understood, are agreed upon. One of these facts is that none of the children of the deceased brothers or sisters died intermediate the date of the will and the death

of the testator, and another is that there are at least sixteen persons who are entitled to seventeen of the number of shares into which the residuum shall be divided.

It is further conceded that, at the date of the will, ten children of his brothers and sisters had died, leaving issue, and that, hence, if their issue are within the intention of the testator, as ascertainable from the will, the number of shares will be swelled to twenty-seven.

The learned counsel engaged have cited a large number of authorities, mostly English, on either side of the question. On examination, as might have been expected, none of them are precisely in point, because in each case, while there are some points of resemblance and some general rules of construction are formulated and followed, yet the particular case, in so far as the language of the will and its grammatical construction are concerned, is *sui generis* and such is nearly ever the case. The supreme effort in all the cases is, to ascertain the true intent and meaning of the testator. The amount of the residuum is stated to be about $112,000. Whether some of the beneficiaries will receive more or less than some others, dependent upon this or that construction, would seem to be of little importance, provided we are able to reach a just conclusion as to what was intended. No one will dispute his right to make an unequal distribution of his estate.

The seventh clause, which is the subject of chief consideration here, directs the executors to divide the residue and remainder into equal shares. The testa-

tor does not specify the number of shares, but leaves that to the executors to ascertain. He then proceeds to give the several shares, so ascertained, to individuals and to classes. The individuals are Grace Place (two shares), Marion Place, Emeline Hayward and Isabel Sullivan (one share each). The classes are the children of his deceased brothers and sisters living at the time of his death, to whom he gives one share each. It is ascertained that, reckoning these only, there would be seventeen shares.

The testator, however, then proceeds to say " but in case any one or more of the children of either of my deceased brothers and sisters mentioned in this clause of my will shall die or have died before me, leaving lawful issue surviving at the time of my death, then, and in that case, such issue of my deceased nephew or niece shall receive the share which his or her ancestor would have received under this clause of my will, had he or she been living at the time of my death, excepting in the case of the issue of Lemuel Crawford, deceased, to whom this clause shall not apply."

It is claimed on the part of those desiring to confine the shares to the smaller number, that the object of this part of said clause was simply to substitute the grandchildren for any of the children of brothers and sisters who might die intermediate the date of the will and the death of the testator; while it is insisted by those advocating a construction which will increase the shares to the larger number, that the intention was, not only to include those who died during the intermediate period, but also those who died prior

thereto. It seems to me that the latter is the proper construction. The word "mentioned," following the words "brothers and sisters," clearly applies to the brothers and sisters mentioned in that clause, and not to the word "children." As to the words "shall die or have died," the first contemplate the then future, while the latter relate to the past. As none did die between the date of the will and the death, the former are of no practical importance ; but as some had died anterior to that date, it is to be fairly inferred that the expression was designed to apply to them. Added force is given to this view when we consider the exception in the case of the issue of Lemuel Crawford, deceased. He was a son of testator's sister, Mary Crawford, and he was dead when the will was executed. This clearly shows that the intention was that the issue of nephews and nieces, who were then dead, should take under the will, and that Lemuel's issue would so take, but for the exception. A sufficient reason is given why they are excepted.

This construction is in harmony with our knowledge of the laws of natural affection. It may be fairly assumed that, *non constat*, the issue of nephews and nieces who had died before the will, were as near and dear to the heart of the testator, in fact, as in blood, as were those whose parents might die during the period between the making of the will and the death of testator.

It follows, therefore, that the children of those deceased nephews and nieces take as direct, and not as substituted, legatees.

Decree accordingly.